[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiffs, Stanislaw Ludyan and Michael Lotto, appeal from a decision of the defendant, the New Haven Board of Zoning Appeals ("the Board") denying the plaintiffs' application for a special exception to permit the operation of a coin-operated retail laundromat at 55-57 Canner Street in the city of New Haven.
The plaintiffs applied for the special exception on February 3, 1998. A public hearing on the application was held on March 10, 1998. On April 7, 1998, the Board voted to deny the plaintiffs' application. The plaintiffs' appeal to this court followed. By motion filed November 20, 1998, Joan C. Clark, Mary CT Page 8052 Lou Palumbo, Jeffrey W. and Martha W. Summerville, Vincent Barry and Stewart E. Hutchings sought to be joined as party defendants. On February 10, 1999 a hearing on this appeal was held, at which, without opposition, Clark, Palumbo, the Summervilles and Barry were joined as party defendants.
 II
The subject property is located in an RM-2 district. The operation of a self-service laundromat is a use permitted in an RM-2 district by special exception (Zoning Ordinance of the City of New Haven, hereafter "Ordinance", Sections 14 B, 63 D, 31B.7). Pursuant to Ordinance, Section 63.D.1 the Board is empowered to grant, after public notice and hearing, special exceptions.
Judicial review of the Board's decision is limited to a determination of whether its decision was arbitrary, illegal or in abuse of its discretion, Whitaker v. Zoning Board of Appeals,179 Conn. 650, 654. The Board is vested with a large measure of discretion, and the burden of showing that the agency has acted improperly rests upon the one who asserts it, Mario v. Fairfield,217 Conn. 164, 169. Courts are not to substitute their judgment for that of the board and decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly exercised after a full hearing, Torsiello v. Zoning Boardof Appeals, 3 Conn. App. 47, 49. Courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution, Burnham v. Planning Zoning Commission,189 Conn. 261, 266 (citation omitted).
In considering an application for a special permit or exception a board acts in an administrative capacity, Irwin v.Planning Zoning Commission, 244 Conn. 615, 626. When so acting, the board's function is limited to a determination whether an applicant's proposed use is one which satisfies the standards set forth in the regulations and statutes, Kaufman v. ZoningCommission, 232 Conn. 122, 150 (citation omitted). While the board does not have the discretion to deny a special exception when the proposal meets the standards, it does have the discretion to determine whether the proposal meets the standards set forth in the regulations, Irwin v. Planning ZoningCommission, supra, at 628. "If, during the exercise of its discretion, the zoning commission decides that all of the CT Page 8053 standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true. "Id.
In its decision denying the plaintiffs' application, the Board stated reasons for its denial. In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations, Id., at 629 (citation, quotation marks omitted). The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given, Id. (citation, quotation marks, omitted). When, as here, the board acts in an administrative capacity, the evidence to support any such reason must be substantial, Huck v. Inland Wetlands WatercoursesAgency, 203 Conn. 525, 540. The "substantial evidence" standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury, Kaufman v ZoningCommission, supra, at 151. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence, Samperi v. Inland Wetlands Agency,226 Conn. 579, 588 (citations, internal quotation marks omitted).
 III
The Board's reasons for denying this application are stated in the minutes of its April 7, 1998 meeting:
 "Previously referred to City Plan Commission for Advisory Report. The Board found that the demographic study conducted by and paid for by the Maytag Corporation (the supplier of machines to the applicants) to be lacking in objectivity and possessed little, if any, probative value. The Board found significant neighborhood opposition and found that the neighborhood residents believed that their needs were satisfied by existing laundromats. The Board found that traffic safety would be significantly impaired, pedestrian safety would be significantly impaired, and that the proposed uses s emissions, odors, and lint would unnecessarily impair the neighborhood's "quality of life". CT Page 8054 Additional parking demands were found to be a significant detriment to the neighborhood. The Board found that the use is not necessary to adequately serve the immediate area and denied the application with a vote of 5-0."
The plaintiffs, in their "Appellant's Supplemental Memorandum of Law" dated February 25, 1999, assert that "the reasons for the Board's denial of the application for a special exception were never made known as required by Sec. 8-3c (b) C.G.S.", and that, accordingly. the plaintiffs' appeal should be sustained. The claim is without merit. It should be noted that the failure of a board to state the reasons for its decision does not void said decision. Rather, the court is required to search the record to determine if the record contains evidence to support the said decision, Zieky v. Town Planning Zoning Commission,151 Conn. 265, 268; Samperi v. Inland Wetlands Agency, supra, at 588-89. However, in this matter, the court finds that the Board stated its reasons "upon its records", General Statutes, Section 8-3c
(b), albeit in the minutes of its April 7, 1998 meeting. Second, the plaintiffs became aware of the stated reasons so as to prosecute their appeal to this court in timely manner and to challenge the said stated reasons.; no prejudice to the plaintiffs was shown. This court, accordingly, must examine the record to determine if the reasons stated, or any of them, are pertinent to the considerations properly addressed by the Board, and, if so, whether there is substantial evidence to support at least one of the reasons stated
 IV
Special Exceptions are governed by Ordinance, Section 63.D. Pursuant to this section, special exceptions shall be granted "only where the Board of Zoning Appeals finds that the proposeduse . . . is in accord with the public convenience or welfare after taking into account, where appropriate:
a) the nature of the proposed site, including its size and shape and the proposed shape and arrangement of structures
b) the resulting traffic patterns and adequacy of proposed off-street parking and loading;
c) the nature of the surrounding area and the extent to which the proposed use or feature might impair its present and future CT Page 8055 development;
d) the proximity of dwellings, churches, schools, publicbuildings and other places of public gathering;
e) all standards contained in this ordinance; and
f) the comprehensive plan of the City of New Haven, and other expressions of the purpose and intent of this ordinance." (Section 63.D.3).
Further, where an application is for special exception to operate a laundromat, the BZA is required, following a hearing on such application, to refer the case to the City Plan Commission for an advisory report (Section 63.D.6), which report "shall be taken into account in the decision of the Board". A self-service laundromat is permitted by way of special exception under Section 31," Special provision for convenience goods and services in Residential Districts". (Section 31.B.7). "It is intended that the uses allowed be limited to those which are both necessary to the neighborhood and so arranged that they will cause minimum conflict with the residential character of the neighborhood" (Section 31.A) In addition to other applicable standards a special exception may be granted only after "a finding by the City Plan Commission that space for such a use is not available in nearby areas which are zoned for business, and that such new use or expansion of an existing use is necessary to serve the immediate neighborhood adequately with convenience goods or services, giving due consideration, among other things, to the character of the neighborhood, the density of development, the shopping habits of neighborhood residents and the availability of public and private transportation. The clustering of two or more uses of diverse types, rather than the scattering of such uses, shall generally be regarded as an advantage, but the existence nearby of a use of the same type as one which is proposed shall require a more extensive showing of necessity for the proposeduse. . ." (Section 31.D.1).
 V
Certain additional facts are helpful in understanding the positions of the parties. The location in question, 53-57 Canner Street, consists of four units, two residential and two commercial. Two units, then, are "grandfathered" for commercial use, and the proposed laundromat would occupy commercial space. CT Page 8056 The proposed laundromat would occupy approximately 900 square feet, and would contain eighteen washers and sixteen driers. The laundromat would be in operation between the hours of 7 a.m. and 10 p. m., seven days per week. The property has seven vehicle parking spaces, and seven garages, which the applicants indicated they would be willing to raze to create additional parking spaces. The applicants submitted a "demographic study" commissioned by the Maytag Corporation, in support of their application. There is presently in operation a self-service laundromat, "Bubble Squeak", at 165 Willow Street, approximately a block and a half from 53-57 Canner Street, and another laundromat operating on Foster Street, some four blocks from 53-57 Canner. The owner of Bubble Squeak was active in opposition to granting of the special exception at issue, testified against the application and was represented by counsel, who participated in the subject administrative hearing. The hearing was a spirited one, with several neighborhood residents speaking in favor of the application and several residents speaking against it. The opponents included Richard Lyons, who spoke on behalf of the neighborhood block watch (ROR W, Transcript, March 10, 1998 hearing, pp. 49-50).
 VI
Following the March 10, 1998 hearing, the BZA, as required, referred the case to the City Plan Commission. The Commission duly filed its advisory report (Return of Record, Exhibit T) with its advice to the BZA: "Denial".
The Commission elaborated:
"The testimony of the neighborhood suggests the new use would likely disturb the neighborhood character specifically concerning traffic. Given the proposed business hours of 7:00 a.m. to 10:00 p. m. seven days a week and the close proximity of area dwellings to the use, added parking demands may well prove burdensome to the abutters. By comparison, the existing neighborhood Laundromat is located on a main traffic artery (Willow Street) well within an RM-2 zone. Although the proposed use also shares the same zone, it is at the juncture of the more restrictive single family zone (RS-2) at North Bank and Canner Streets where the traffic flow is considerably less. The Commission observes if it were to grant this special exception, the impact of the use may disrupt the neighborhood character." CT Page 8057
"ADVICE:
The Commission defers to the neighborhood desire where residents feel the area is adequately served by the existing Laundromats, and where the consensus appears to be that the benefits are outweighed by the costs to area tranquillity. Because the proposed use borders a single family zone and poses noise, parking and traffic difficulties in the immediate neighborhood, the Commission finds the use is not necessary to adequately serve the immediate area and therefore recommends denial."
 VII
The plaintiffs assert that the City Plan Commission failed to address certain standards which Section 31.D required it to address, namely: "that space for such use is not available in nearby areas which are zoned for business;" In fact, the Commission did address this issue, stating "A window survey of the neighborhood shows a similar use at 165 Willow Street (Bubble Squeak Laundromat} and the nearest vacant retail spaces {in a BA zone} are on State Street. However, available vacant space on State Street is too removed from the target service area." Thus, not only did the Commission address this standard, but its finding could be construed as favorable to the plaintiffs.(ROR, Exhibit T., p. 1).
Another standard which plaintiffs claim the Commission failed to address is: "that the use is necessary to serve the immediate neighborhood adequately with convenience goods or services, giving due consideration, among other things, to the character of the neighborhood, the density of development, the shopping habits of neighborhood residents, and the availability of public and private transportation." Again, it is clear that the Commission did, indeed, address this standard, declining to find that the proposed use was necessary to serve the immediate neighborhood, crediting opponents' testimony regarding the character of the neighborhood, the density of development and the impact of business hours and parking on the neighbors. The plaintiffs citePeter DeRose v. Georgia Newcomb, No. CV-92 0340886-S. In that case the court found that the City Planning Commission had granted a special exception without making the finding requisite under Section 31.D. The case clearly is distinguished from the instant matter, where the Commission adequately addressed the Section 31.D standards, concluded the application failed to meet CT Page 8058 those standards and recommended denial of the application.
 VIII
The plaintiffs argue further that the defendant BZA failed to address the considerations listed in Section 63.D except for traffic and parking.
First, the BZA, in reaching its decision took into account the advisory report of the City Plan Commission and the considerations outlined therein.
Second, the list of considerations are to be taken into account "where appropriate", thus affording the BZA discretion.
Third, it is simply not true that the BZA addressed only traffic and parking. The BZA found "significant neighborhood opposition", which goes to the issue of public convenience and welfare; and addressed the issue of necessity for the proposed use.
 IX
In seeking a special exception, the burden is on the applicants to demonstrate to the BZA through the City Plan Commission (Section 31. D) that the proposed use is necessary to serve the immediate neighborhood adequately. The existence nearby of a use of the same type as one which is proposed "shall require a more extensive showing of necessity for the proposed use." (Section 31.D. 1) The plaintiffs claim the Maytag demographic study (and map) were the only evidence on need in the record, with the clear implication that therefore the BZA had no alternative but to approve the application. There was additional evidence on the issue in the record, including testimony from neighbors who opposed the application as well as that of the owner of Bubble Squeak, who testified as to the capacity of his establishment to meet the needs of the neighborhood. His vested interest in the outcome does not require the BZA to discard his testimony. The BZA rejected the Maytag demographic study, which it was free to do. It should be noted that the plaintiffs apparently misread the data in the Maytag report and misstate its contents. The plaintiffs repeatedly assert that the report shows that some 72% of the neighborhood residents are college students, likely to need and utilize laundromat service. What the report states, however, is that some 72% of the students in the CT Page 8059 neighborhood are college students. (ROR, Exhibit J, p. 6 "POPULATION ENROLLED IN SCHOOL"), a far less persuasive statistic.
The plaintiffs in effect are asking the court to discard record evidence on which the BZA relied in reaching its decision and to adopt other record evidence favorable to the application. This the court declines to do.
The court finds that there was substantial evidence in the record to support the BZA's finding that the proposed use is "not necessary to adequately serve the immediate area."
 X
Pursuant to Ordinance, Section 63.E.2.(b), the BZA' forwarded the subject application to the city's Traffic Parking Department for review and comment. The Department forwarded its report to the BZA (ROR, Exhibit H) with the comments "RECOMMENDATION — No objection" and "COMMENT — None". The BZA was free to accord the said report the weight it deemed appropriate, but was not bound by the report's recommendation. At the public hearing of March 10, 1998, several neighbors testified as to their concerns with traffic and parking in the neighborhood, their current problems and the difficulties they anticipated should the application be granted. Labeling such comments "conclusory" does not preclude the BZA from according such testimony the weight it deems appropriate. The court finds that there was substantial evidence in the record to support the BZA's findings that "traffic safety would be significantly impaired" and that "Additional parking demands would be a significant detriment to the neighborhood"
 XI
Because there is substantial evidence in the record to support the ZBA's findings that "Additional parking demands would be a significant detriment to the neighborhood;" that "traffic safety would be significantly impaired; "and that" the use is not necessary to adequately serve the immediate area", the plaintiffs' appeal must fail. The court finds that the defendant BZA properly took into consideration the applicable standards against which it is required to measure an application for special exception. The court finds that there is substantial evidence in the record to support the defendant's stated reasons CT Page 8060 for denial of the subject application for special exception.
The appeal. is, accordingly, dismissed and judgment may enter in favor of the defendants.
By the Court,
Downey, J.